**Gary WALKER, Petitioner–Appellant,**

v.

**Charlie JONES, Warden, Respondent–Appellee.**

**No. 92–6111.**

United States Court of Appeals, Eleventh Circuit.

Jan. 7, 1994.

**1570**

Gary Walker, Atmore, AL, Royce A. Ray, III, Finkbohner & Lawler, Mobile, AL, for petitioner-appellant.

Beth Slate Poe, Asst. Atty. Gen., Montgomery, AL, for respondent-appellee.

Before HATCHETT and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

HATCHETT, Circuit Judge:

Appellant, Gary Walker, brought a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, seeking collateral relief from his conviction for the murder of Eleanor and Felix Laird, and from the resulting sentence of life imprisonment without parole. Walker raised a myriad of claims, and the district court denied relief on all claims. After reviewing the claims, we conclude that the district court committed no error and affirm its order dismissing Walker's habeas corpus petition.

### FACTS

Between 6 a.m. and 6:30 a.m. on the morning of June 7, 1985, Mobile County sheriff's deputies, dispatched to a house in Mobile County, Alabama, discovered Felix Laird dead and his wife, Eleanor Laird, severely wounded from shotgun blasts. While the deputies were on the scene, Eleanor Laird stated that Gary Walker shot her and her husband. Deputy Sergeant Ron Diegan tape recorded the statement. Eleanor Laird died soon after the recording of her statement.

At approximately 5:50 a.m. on the same morning, Deputy Frank Alpin stopped Gary Walker's blue Toyota pickup truck after he ran a red light. Alpin told Walker to drive more carefully. Alpin testified that Walker did not appear under the influence of alcohol.

Kimberly Laird, who lived next door to Felix and Eleanor Laird, awoke on the morning of the shooting after hearing two gunshots. Upon looking out the window, she saw a blue truck with white letters on the door and a man resembling Walker running to the truck. Between 6 a.m. and 6:15 a.m., a second person, Leamon Baxley, saw a person driving a blue pickup truck stop near his front yard and throw a shotgun into the bushes. Baxley called the police, and a policeman retrieved a Remington shotgun from the bushes. At trial, Baxley could not identify the person who threw the shotgun into the bushes but did testify, over objection, that he picked out Walker's photograph from a photographic spread on the night of the murders.

Frank Spann, a close, personal friend of Walker's, identified the Remington shotgun recovered near Baxley's house, as his, and stated that he had stored the gun at his brother's trailer. Paul Spann, Frank Spann's brother, testified that during the early morning hours of June 7, 1985, Walker came to his trailer and said that "he had blown Felix and Eleanor away." Paul Spann also testified that later, when he learned that Felix and Eleanor Laird were actually dead, he went to his trailer and discovered his shotgun and several shotgun shells missing. Deputy Sheriff Mark Sloke took possession of the shotgun on June 7, 1985, and removed two latent fingerprints from the gun. Brian Delmas, who worked for the Alabama Department of Forensic Science, testified that one of the latent finger prints matched Walker's right ring finger, and the other latent palm print matched Walker's right palm. Detective William Estes retrieved two expended 12–gauge hulls lying in the Lairds' front yard, which matched the one live round remaining in the magazine of the murder weapon.

At trial, Walker testified that on the evening of June 6, 1985, he went drinking with two friends. He stated that during that evening he became highly intoxicated, and began hallucinating because someone slipped drugs

into his beer. Walker further testified that he lost consciousness and could not recall going to the Lairds' home, shooting them, going to Spann's trailer, or being involved in a police stop. He testified that the only thing he remembered was two men throwing him into the back of a car and then throwing him out onto an interstate highway.

## PROCEDURAL HISTORY

On June 28, 1985, a Mobile County grand jury indicted Walker for capital murder for the killing of Eleanor and Felix Laird. Following a two-day trial, the jury found Walker guilty of capital murder and recommended that Walker receive a sentence of life in prison without the possibility of parole. The trial court adjudged Walker guilty of capital murder and sentenced him to life in prison without parole.

On January 5, 1987, Walker appealed his conviction to the Court of Criminal Appeals of Alabama, which affirmed his conviction.[1] Thereafter, Walker appealed to the Alabama Supreme Court which denied Walker's petition. Upon exhausting all state remedies, Walker filed this petition for a writ of habeas corpus.[2] On December 30, 1991, a United States magistrate judge issued a Report and Recommendation concluding that Walker's constitutional rights were not violated, and recommending that the district court deny Walker's petition for writ of habeas corpus. On January 27, 1992, the district court adopted the magistrate judge's recommendation as the opinion of the court and denied Walker's petition for habeas corpus relief with prejudice. Representing himself, Walker appealed. On April 7, 1993, the district court appointed counsel for Walker, and counsel filed a supplemental brief.

## CONTENTIONS OF THE PARTIES

Walker contends that (1) the trial court's reasonable doubt instruction violated the Due Process clause of the Fourteenth Amendment under *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), and that (2) the trial court's error warrants reversal as an independent claim or the trial counsel's failure to object to the instruction constitutes ineffective assistance. Walker also contends that the trial court erred when it failed to instruct the jury on the lesser-included offense of intentional murder.

The government contends that the *Cage* issue is not properly before this court be-

1. *Walker v. State*, 523 So.2d 528 (Ala.Crim.App.), cert. denied, 523 So.2d 528 (Ala.1988).

2. In this petition, Walker raised the following claims: (1) the trial court erred in allowing the state to go into details of prior difficulties between him and Felix Laird; (2) the trial court erred in admitting into evidence the photographic spread; (3) the trial court erred when it denied Walker's motion to suppress Leamon Baxley's out-of-court identification of Walker; (4) the trial court erred when it denied Walker's motion to exclude and motion for judgment of acquittal; (5) the trial court erred when it failed to charge the jury on the lesser included offense of intentional murder; and (6) his sentence of life without parole constitutes cruel and unusual punishment and is disproportionate to the crime he committed. After Walker filed his petition, he raised several new arguments in pleadings filed with the district court. Thus, in addition to the six issues raised in the original petition, the district court considered claims of ineffective assistance of counsel of both trial counsel and appellate counsel. Walker claimed trial counsel was ineffective because he failed: (1) to object to a fatal variance between the allegations contained in the indictment and the proof offered at trial; (2) to seek a mistrial when one of the fingerprint experts testified that his failure to submit for evaluation several smudged prints on the shotgun eliminated the possibility of someone else identifying those prints; (3) failed to object to the prosecutor's comments during opening and closing arguments; (4) failed to object to burden-shifting and reasonable doubt instructions; (5) failed to obtain the results of his first attorney's investigation; (6) failed to investigate sources of evidence favorable to the defendant or subpoena alibi witnesses; (7) failed to object to the introduction of gruesome photographs of the victims; and (8) failed to object to the state's failure to prove an aggravating circumstance to support the imposition of the death penalty. Walker also alleged that appellate counsel was ineffective because she failed to challenge: (1) the introduction of Eleanor Laird's dying declaration; (2) the prosecutor's improper comments; (3) the death qualifying of the venire and the prosecutor's systematic exclusion of those jurors with a conscientious objection to the death penalty; (4) the defectiveness of the indictment; (5) the state's knowing use of false evidence; (6) the state's selective prosecution; (7) the state's failure to make a timely disclosure of certain inculpatory evidence until the date of trial; and (8) trial counsel's ineffectiveness.

cause Walker failed to raise it as an independent claim in the district court. Alternatively, the government contends that trial counsel's failure to object to the reasonable doubt instruction did not constitute ineffective assistance. Finally, the government contends that the omission of an instruction on intentional murder was proper under the facts of this case.

## ISSUES

The issues on appeal which we discuss are: (1) whether Walker raised the *Cage* issue as an independent claim for relief in the district court; (2) whether trial counsel's failure to object to the reasonable doubt instruction constitutes ineffective assistance of counsel; and (3) whether the trial court erred in failing to instruct the jury on intentional murder.

## DISCUSSION

### A. Cage v. Louisiana

In *Cage v. Louisiana,* 498 U.S. 39, 41, 111 S.Ct. 328, 329–30, 112 L.Ed.2d 339 (1990) the Supreme Court considered whether a reasonable doubt instruction, which equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty, violated the defendant's rights under the Fourteenth Amendment. Upon considering the effect of the instruction on reasonable jurors, the court declared the instruction unconstitutional. In reaching this decision, the Court determined that the words "substantial" and "grave" suggested a higher degree of doubt than the reasonable doubt standard requires. *Cage,* 498 U.S. at 41, 111 S.Ct. at 329–30. Further, the court reasoned: "[w]hen those statements are then considered with the reference to 'moral certainty,' rather than an evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." *Cage,* 498 U.S. at 41, 111 S.Ct. at 330 (footnote omitted).

In this case, the trial court's reasonable doubt instruction likened a reasonable doubt to a "substantial doubt," and instructed the jury that a "moral certainty" was required to find Walker guilty, not an evidentiary certainty. The trial court made repeated references to this standard and at one point stated: "you will observe that the state is not required to convince you of the defendant's guilt beyond all doubt *but simply beyond all reasonable doubt and to a moral certainty.*" (Emphasis added.) The trial court used the term "reasonable doubt" in conjunction with the term "moral certainty" seven times and repeatedly compared reasonable doubt with a "substantial doubt."

Walker contends that the district court's reasonable doubt instruction equated a reasonable doubt to a "substantial doubt" beyond a "moral certainty," violating *Cage.* He argues that such an instruction violates the Due Process Clause of the Fourteenth Amendment and warrants the reversal of his convictions. Walker, however, acknowledges that he failed to object to the instruction at trial, and that such a procedural default usually bars consideration of the issue in a petition for federal habeas corpus. 28 U.S.C. § 2254; *Meeks v. Singletary,* 963 F.2d 316, 320 (11th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1362, 122 L.Ed.2d 741 (1993). Walker argues, however, that this court should excuse his procedural default because he has shown cause and prejudice, and a fundamental miscarriage of justice warranting review. *Meeks,* 963 F.2d at 320.

■ Upon reviewing the record, we find that Walker failed to raise this issue as an independent claim for relief in the district court. In his petition, Walker merely claimed ineffective assistance of counsel due to counsel's failure to object to the instruction. In such circumstances, we have repeatedly held that "an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Depree v. Thomas,* 946 F.2d 784, 793 (11th Cir.1991). Thus, because he did not raise this issue in his petition, we do not address this issue as an independent claim.

■ Alternatively, Walker argues that his attorney's failure to object to the trial court's reasonable doubt instruction denied

him the effective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail under *Strickland,* Walker must demonstrate that trial counsel's failure to object to the instruction constitutes deficient performance and that the deficient performance caused him prejudice. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. To prove deficient performance, Walker must show that his attorney's representation fell below an "objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064. To prove prejudice Walker must show that a reasonable probability exists that "but for" counsel's deficient performance, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

Walker was tried for capital murder in 1986, four years before the Supreme Court decided *Cage.* At the time of his trial, the Supreme Court had not yet declared such jury instructions unconstitutional. Moreover, at the time of his trial, Alabama courts had rejected challenges to reasonable doubt instructions very similar to the ones challenged here. *See, e.g., Hall v. State,* 54 Ala.App. 198, 306 So.2d 290, 293 (Ala.Crim. App.1974) (trial court committed no error when it instructed the jury that a reasonable doubt is a "substantial doubt"), *cert. denied,* 293 Ala. 757, 306 So.2d 294 (1975); *Baker v. State,* 477 So.2d 496, 502–03 (Ala.Crim.App. 1985) (trial court committed no error when it defined reasonable doubt as a doubt for which a "real and substantial reason can be given"), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1986).

■ Because Alabama courts had rejected similar claims and the Supreme Court had not yet decided *Cage,* trial counsel had no basis for objecting to the trial court's instruction on reasonable doubt. Trial counsel's failure to object to the instruction was, therefore, reasonable. Because trial counsel acted reasonably, his representation in this regard was not deficient, and we need not address whether the alleged failure caused Walker prejudice. We affirm the district court's decision with respect to Walker's ineffective assistance of counsel claim.

**B. Instruction on Intentional Murder**

Following the killings, the grand jury indicted Walker on capital murder, for the killing of two or more persons "pursuant to one scheme or course of conduct," pursuant to Ala.Code § 13A–5–40(a)(10). Citing *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), Walker contends that the trial court was obligated to instruct the jury on intentional murder, pursuant to Ala.Code § 13A–6–2(a)(1), because it is a lesser-included offense of capital murder. Ala.Code § 13A–5–40(b). The government contends that under the facts of this case no rational basis existed for instructing the jury on intentional murder.

■ Under *Beck,* a capital defendant cannot receive a death sentence when the trial court prohibits the jury from considering a verdict of guilt on a lesser included, non-capital offense, if the evidence supports such a verdict. *Beck,* 447 U.S. at 635, 100 S.Ct. at 2388–89. In Alabama, intentional murder, in some instances, constitutes a lesser included offense of capital murder. *Holladay v. State,* 549 So.2d 122, 129 (Ala.Crim. App.1988), *aff'd,* 549 So.2d 135 (Ala.1989). Section 13A–5–40(b) of the Alabama Code specifically provides that intentional murder under section 13A–6–2(a)(1) "may be a lesser included offense" of capital murder under Alabama Code § 13A–5–40(a). The rule in *Beck,* however, applies only in those instances where a reasonable view of the evidence supports a conviction for the lesser included offense. *Leverett v. Spears,* 877 F.2d 921, 924 (11th Cir.1989); *Holladay,* 549 So.2d at 129. *See also Jones v. State,* 514 So.2d 1060, 1063 (Ala.Crim.App.) (accused entitled to instruction on lesser included offenses where a reasonable theory from the evidence supports the position), *cert. denied,* 514 So.2d 1068 (Ala.1987).

In *Holladay,* the state's evidence demonstrated that the same gun killed two people. The defendant asserted an alibi defense, and neither party presented any evidence showing that the defendant killed only one of the victims. In rejecting the defendant's claim that he was entitled to an instruction on the lesser included offense of intentional murder, the Alabama Appellate court concluded that

no reasonable theory existed, based on the evidence presented, which justified a conviction for intentional murder. *Holladay,* 549 So.2d at 129. Because the evidence only supported a conviction on the crime charged in the indictment, the court affirmed the trial court's refusal to instruct the jury on intentional murder. *Holladay,* 549 So.2d at 129.

In this case, the evidence presented at trial showed that Walker killed the Lairds pursuant to one scheme or course of criminal conduct, so no reasonable evidentiary basis exists to support an instruction on the lesser included offense of intentional murder. *Fisher v. State,* 587 So.2d 1027, 1032 (Ala. Crim.App.1991); *Holladay,* 549 So.2d at 130. The government showed that the Lairds were killed by the same gun, and that Eleanor Laird identified Walker as the killer before dying. Furthermore, Frank Spann testified that Walker told him that "he had blown Felix and Eleanor away," and the government introduced evidence showing that Walker's fingerprint and palm print were taken from the murder weapon. In light of Walker's alibi and intoxication defenses, this evidence could only support a conviction on the crime charged in the indictment, capital murder, because it demonstrates that the Lairds were murdered pursuant to one scheme or course of conduct. Ala.Code § 13A–5–40(a)(10); *Holladay,* 549 So.2d at 129.

### C. Walker's Remaining Claims

Additionally, Walker contends that: (1) the district court erred when it admitted evidence of his prior difficulties with Felix Laird; (2) the failure to afford counsel during the photographic line-up constituted error; (3) the photographic line-up was unduly suggestive; (4) the government introduced insufficient evidence to support a conviction; (5) the trial court erred when it admitted Eleanor Laird's dying declaration; (6) the sentence of life without parole constitutes cruel and unusual punishment; and (7) the state failed to prove an aggravating circumstance as required for a capital offense. We have reviewed these claims and conclude that each lacks merit.

### CONCLUSION

Because Walker failed to raise his *Cage* claim as an independent basis for habeas corpus relief in the district court, and his trial counsel was not ineffective for failing to object to the trial court's reasonable doubt jury instruction, we affirm the district court.

AFFIRMED.