[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10264

Non-Argument Calendar

_____

KOURTNEY SHELLEY,

Plaintiff-Appellant,

versus

WESLEYAN COLLEGE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:18-cv-00380-MTT

_____

Before WILSON, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Kourtney Shelley, an African-American proceeding pro se, appeals the district court's grant of summary judgment to her former employer, Wesleyan College (Wesleyan), in her suit alleging race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2, and 42 U.S.C. § 1981. Wesleyan contends that summary judgment was properly granted on both of Shelley's claims and that Shelley has abandoned any argument challenging summary judgment for making only general, conclusory statements in her brief and failing to provide factual support. We agree with Wesleyan that Shelley has abandoned these arguments. However, assuming arguendo that she has preserved her arguments, they lack merit because she failed to establish a prima facie case for both her race-discrimination claim and her retaliation claim.[1] Therefore, we affirm the district court.

I.

---

[1] Before the district court, the parties also referred to the "convincing mosaic" standard for opposing summary judgment, and to a harassment or hostile work environment claim. We conclude that neither of these is preserved on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014); *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). Likewise, we decline to address Shelley's reliance on a "cat's paw" theory of liability, which she raises for the first time on appeal. *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994).

The facts of this case are contested by both sides. The indisputable facts are that in November 2017, Kourtney Shelley began working for Wesleyan College as the Transfer Support Coordinator. Her supervisor, Clint Hobbs, who is Wesleyan's Vice President for Strategic Enrollment, terminated Shelley's employment in January 2018. However, the parties present different facts and circumstances leading up to Shelley's termination.

Hobbs stated in an affidavit that he hired Shelley due to her depth of experience in the field. Hobbs soon realized that Shelley was not meeting his expectations after issues arose concerning her adjustment to the new job. To aid in her adjustment, Hobbs assigned Shelley's co-worker, Katrina Skalko, to train Shelley in her new role. Although Skalko was not Shelley's supervisor, she reported issues to Hobbs about Shelley's work, such as Shelley's failure to complete the training, absenteeism, and failure to adhere to workplace policies. The problems came to a head when Hobbs made the decision to terminate Shelley in January 2018, saying that she was not a good fit for the position.

Shelley contends that her termination was not a result of her poor work performance, but rather the result of racial discrimination and subsequent retaliation for her effort to resolve these issues. She alleges that Skalko was bullying and harassing her. For example, Shelley alleges that Skalko threw down a box at Shelley's feet and asked Shelley to take it to the conference room and that Skalko told Shelley she needed a babysitter one afternoon when Shelley was heading home around 5 p.m.

After her termination, Shelley sued Wesleyan for race discrimination and retaliation under Title VII and 42 U.S.C. § 1981. However, Shelley presented no direct evidence for either of these claims and therefore had to rely on circumstantial evidence. To establish race discrimination, Shelley needed to prove, among other things, that Wesleyan treated similarly-situated employees outside of her protected class more favorably. *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc). To succeed on her retaliation claim, Shelley needed to establish that she engaged in a statutorily-protected activity. *See Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012). In granting Wesleyan's motion for summary judgment, the district court found that Shelley failed to establish a prima facie case for either claim.

Shelley now appeals the district court's ruling regarding her race-discrimination claim and her retaliation claim. For ease of reference, we address each claim separately.

II.

When appropriate, we will review de novo a lower court's grant of summary judgment, using the same legal standards applied by the district court. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). An appellant abandons a claim, however, when she either makes only a passing reference to it or "raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo*, 739 F.3d at 681. Pro se pleadings will be

liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant has met this burden, courts must view the evidence in the light most favorable to the non-movant. *Alvarez*, 610 F.3d at 1263–64.

When a movant has shown that no genuine dispute of material fact exists, the burden shifts to the non-movant to show that there is a genuine issue of material fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-movant must go beyond the pleadings and present competent evidence showing how specific facts create a genuine issue. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race . . . ." 42 U.S.C. § 2000e-2(a)(1). Under 42 U.S.C. § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts." Claims under § 1981 are subject to the same analytical framework as claims under Title VII. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Without direct evidence, a claimant may show discrimination through circumstantial evidence by satisfying the *McDonnell Douglas* burden-shifting framework. *Lewis,* 918 F.3d at 1220. Under that framework, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outsider her class more favorably." *Id.* at 1220–21. The plaintiff can also establish the fourth prong by showing that her employer replaced her with a person outside her protected class. *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 n.7 (11th Cir. 2018).

We have noted before that "discrimination is a comparative concept—it requires an assessment of whether 'like' (or instead different) people or things are being treated 'differently.'" *Lewis*, 918 F.3d at 1223. To prove that an employer treated a similarly-situated individual outside the employee's protected class more favorably, the employee must show that she and her proffered comparators were "similarly situated in all material respects." *Id.* at 1224. Generally, a similarly-situated comparator will engage in the same basic conduct as the plaintiff, will be subject to the same policies, will have the same supervisors, and will share the plaintiff's employment or disciplinary history. *Id.* at 1227–28.

If the plaintiff makes out a prima facie case of discrimination, the burden shifts to the employer to articulate "a legitimate,

nondiscriminatory reason" for its action.  *Id.* at 1221.  If the employer articulates such a reason, the burden then shifts back to the plaintiff to show that the stated reason is pretextual.  *Id.*  A plaintiff can show pretext by presenting evidence that a proffered reason is false, and that discrimination was the true reason.  *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006).

Here, any challenge to the district court's disposition of Shelley's race-discrimination claim fails for several reasons.  First, even liberally construed, Shelley has abandoned any argument that the district court erred in granting summary judgment against her on that claim.  *Tannenbaum*, 148 F.3d at 1263.  Shelley references her race-discrimination claim only once in her appellate brief, making a passing reference to it in her statement of the issues.  She does so in a perfunctory manner with no supporting arguments or authority.  *Sapuppo*, 739 F.3d at 681.  Thus, she has abandoned this argument on appeal.

Even if we were to conclude that Shelley has not abandoned a challenge to the grant of summary judgment on her race-discrimination claim, we nevertheless agree with the district court that Shelley failed to establish a prima facie case of race discrimination under *McDonnell Douglas* because she failed to identify a similarly-situated comparator or show that she was replaced with someone outside her protected class.  *Lewis*, 918 F.3d at 1221; *Hornsby-Culpepper*, 906 F.3d at 1312 n.7.  Further, even if Shelley established a prima facie case of race discrimination, Wesleyan identified    legitimate,    nondiscriminatory    reasons    for    her

termination, and Shelley did not establish that these reasons were pretextual. *Lewis*, 918 F.3d at 1221; *Brooks*, 446 F.3d at 1163.

## III.

Title VII prohibits employers from retaliating against an employee because she has opposed acts made unlawful by Title VII. 42 U.S.C. § 2000e–3(a). Retaliation claims are likewise cognizable under section 1981 and are analyzed under the same framework. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc).

We employ the *McDonnell Douglas* burden-shifting framework to analyze claims of retaliation when an employee relies on circumstantial evidence. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).

A prima facie claim of retaliation under Title VII requires the plaintiff to show that: "(1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Chapter 7 Tr.*, 683 F.3d at 1258 (internal quotation marks omitted). With respect to the first prong, the opposition clause of Title VII protects an employee from retaliation because the employee opposed a practice that was unlawful under Title VII. *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000); 42 U.S.C. § 2000e-3(a).

As with discrimination claims, if a plaintiff establishes a prima facie case for retaliation, and the defendant shows that it had

legitimate, non-retaliatory reasons for its adverse decision, then "[t]he plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998). The plaintiff must meet the proffered reason "head on" and demonstrate "weaknesses, implausibilities, inconsistencies, [and] incoherencies" to survive the summary judgment stage. *Gogel*, 967 F.3d at 1137.

Here, too, even if we assume arguendo that Shelley has not abandoned a challenge to the grant of summary judgment on her retaliation claim, we conclude that the district court properly found that she failed to establish a prima facie case of retaliation under *McDonnell Douglas* because she failed to show that she engaged in a statutorily-protected activity. *Total Sys. Servs.*, 221 F.3d at 1174. Even if Shelley established a prima facie case of retaliation, Wesleyan identified legitimate, non-retaliatory reasons for her termination, and Shelley did not establish that these reasons were pretextual. *Olmsted*, 141 F.3d at 1460; *Gogel*, 967 F.3d at 1137. Accordingly, we affirm.

**AFFIRMED.**